# CIRCUIT COURT OF THE CITY OF RICHMOND

Royal Surplus
Lines Ins. Co.,
etc., et al.

v.

Doris Nichols et al.

Case No. HJ-343-4

State Farm Mutual
Auto. Ins. Co.,
etc., et al.

v.

Doris Nichols et al.

Case No. HJ-1022-1

BY JUDGE RANDALL G. JOHNSON

July 7, 1999

I have now received bills of particulars and grounds of defense for all claimants and insurers except Doris Nichols. Whether her bill of particulars was filed and lost or simply not filed, I ask that it (or a copy) be sent directly to me, not to the clerk's office, by July 16th. As long as I receive it by then,

I will not entertain a motion to dismiss her claim for failing to file it before now. Of course, copies must be sent to all other counsel.

I have also received from each claimant's counsel a statement of how that claimant wants his or her claim resolved; that is, by jury trial, bench trial, or arbitration. I am unable to determine from the statements, however, whether the insurers involved in each particular claim have agreed to the method proposed for that claim. As I indicated at the June 4th hearing, only if all of the parties to a particular claim agree to a resolution other than a jury trial can a resolution other than a jury trial be employed. For example, if Ms. Pugh and Mr. Prince want Doris Nichols' claim resolved by arbitration, Mr. Francuzenko (Royal Surplus), Ms. Webster (State Farm), and Mr. Beasley (Metropolitan Property and Casualty) all have to agree to arbitration. Otherwise, a jury trial will be held. The statements I received from counsel for the claimants do not indicate that counsel for the insurers involved in their claims have consented to the resolutions chosen.

I ask that counsel for each claimant submit a letter to me, not to the clerk's office, no later than Friday, July 23, 1999, telling me how his or her client wants that particular claim resolved: jury trial, bench trial, or arbitration. The letter must state that counsel has conferred with all other counsel involved in that claim and (i) that if arbitration or a bench trial is chosen, all other counsel involved in that claim agree; or (ii) that a jury trial will be held. According to the court's records, Royal Surplus and State Farm are involved in all of the claims; Metropolitan is involved in Doris Nichols' claim; National Interstate (Mr. Young) is involved in Kathleen Mims' claim; and Nationwide Mutual (Mr. Bradfield) is involved in the claim of Leon W. Carter's estate. If there are other insurers involved in any claim or if Metropolitan, National, or Nationwide is involved in claims other than those listed, please let me know immediately.

I also ask that counsel not specify a "contingent" resolution; that is, that he or she will agree to arbitration "if everyone else will." By the time you write to me, you should know whether everyone else agrees to arbitration. I do not intend to call each of you to ask. While I continue to believe that it makes absolutely no sense for all counsel *not* to agree to one arbitration or at least have the same arbitrator or judge hear all of the claims, I do not believe that I have the authority to require either of those options. I simply cannot imagine, though, what benefit any claimant or insurer will derive from not agreeing to one arbitration, or one arbitrator, or bench trials before one judge, especially since no final judgment is going to be entered until after I know the results of all claims.

### July 16, 1999

Rule 1:12 of the Rules of the Supreme Court of Virginia requires that copies of all pleadings, motions, and other papers be served on "each" counsel of record, not just those counsel believed by the filing party to be interested in or effected by the filing. In fact, the other parties are probably very interested in the motion.

With regard to whether the court will hold a hearing on the motion for summary judgment, it is up to counsel to determine whether a hearing is necessary. Only if *all* counsel agree that a hearing is not necessary, which agreement must be communicated in writing by the moving party directly to me, not to the clerk's office, will the court rule on the motion without a hearing. Otherwise, a hearing must be held. In the absence of an agreement, it is up to the moving party to schedule a hearing after consulting with all other counsel about their avoid dates.

### July 23, 1999

I am glad that at least eight of the claimants have agreed to have their claims heard by the same arbitrator, and I continue to believe that it would be best if all nine claims were heard by the same arbitrator. As I indicated at the last hearing, however, it is each claimant's right to have his or her claim heard in court, and Ms. Nichols will not be criticized by the court for refusing to join in the arbitration. She does run the risk, however, of having her claim valued differently — which may be higher or lower — than all of the other claims.

I ask that Ms. Pugh consult with the other counsel interested in her claim and call the clerk's office to set a trial date for Ms. Nichol's claim. Trial must be held by October 19, 1999, which is the day by which I will have the arbitrator's decisions on the other claims.

Finally, once we have had a determination of the "raw" value of each claim, one or more counsel may want another hearing to submit proposed distributions from the limited insurance funds available.

### October 19, 1999

These cases arise out of a traffic accident that resulted in multiple deaths and injuries. It is before the court for distribution of limited insurance proceeds. In order to understand how the parties and the court came to this point, some background is needed.

The accident occurred on July 3, 1997, on Interstate 95 near Emporia, Virginia. Anthony Bowman ("Bowman") was driving a rented van in which Corey Johnson, Clifton Harriott, Skye Edmonds, Leon Carter, Jr., and Antonio Bowman were passengers. Bowman apparently lost control of the van, crossed the median of the highway, and went into the approaching lanes. He struck a vehicle driven by Doreatha Starks and in which Doris Nichols was a passenger, pushed that vehicle into a vehicle occupied by Kathleen Mims, and struck a tractor-trailer operated by Clyde Huffman. Bowman, Johnson, Harriott, Edmonds, Carter, Antonio Bowman, Starks, and Huffman were killed. Nichols and Mims were injured.

At the time of the accident, Bowman was an insured under three liability policies issued by State Farm Mutual Automobile Insurance Company. Each policy provided personal injury coverage limits of $50,000 per person and $100,000 per occurrence, thus creating an available fund from State Farm for this accident in the total amount of $300,000. Also at the time of the accident, Bowman was covered by a liability policy issued by Royal Surplus Lines Insurance Co. in connection with his rental of the van. That policy provided personal injury coverage limits of $25,000 per person and $50,000 per occurrence.[1]

On February 20, 1998, Royal filed a "Bill of Complaint for Interpleader." The bill named as defendants the two persons injured and the personal representatives of all of the persons killed in the accident except Anthony Bowman, the driver of the van, who was listed as a plaintiff. Alleging that Royal Surplus "is or may be exposed to multiple liability as a result of the claims" of the defendants against Anthony Bowman, the bill asked the court to direct Royal to pay its $50,000 of personal injury coverage into court, require the defendants to interplead their claims in the action, and discharge Royal from further liability. On May 29, 1998, State Farm filed an almost identical "Bill of Complaint for Interpleader" against the same defendants and seeking the same relief with regard to its $300,000 personal injury coverage. Anthony Bowman was also made a plaintiff in State Farm's action.

By order entered August 31, 1998, the two cases were consolidated. By a series of subsequent orders, six other insurers and the employer of Clyde Huffman, the deceased tractor-trailer driver, were allowed to intervene. Metropolitan Property and Casualty Insurance Company, Nationwide Mutual Insurance Company, and United States Fidelity and Guaranty Company ("US

---

[1] All of the policies also provided property damage coverage, but it is the court's understanding that all of the property damage claims have been resolved by the parties.

F & G") are liable with regard to underinsured motorist coverage applicable to certain claims. National Interstate Insurance Company has underinsured motorist coverage, property damage coverage, and medical payments coverage on one of the injured claimants. Canal Insurance Company paid Huffman's estate for the loss of his tractor-trailer. Liberty Mutual Insurance Company and Grayson Mitchell, Inc., Huffman's employer, have paid money for Huffman's medical and funeral expenses and to Huffman's dependents under a workers' compensation policy. More will be said later about the precise amounts of coverage and payments.

On June 15, 1999, after several pretrial motions and hearings, the court entered an order holding that the consolidated actions could proceed even though they were not "true" interpleaders. That ruling was made in response to a suggestion by one of the parties that the court was without jurisdiction. The suggestion was based on the fact that in a true interpleader action, the interpleading party must relinquish all interest in the controversy. *See, e.g., Haseltine v. Brickey*, 57 Va. (16 Gratt.) 116 (1860). Here, State Farm and Royal could not relinquish all interest in the controversy because of their contractual duty to defend their insureds. The court ruled, however, that the actions were "in the nature of" interpleaders over which it had jurisdiction. For example, in *Bryant v. Tunstall*, 177 Va. 1, 12 S.E.2d 784 (1941), an action "in the nature of" an interpleader was allowed to proceed even though it was filed not by the party that held disputed funds, but by a creditor of one of the disputants, that creditor being very much interested in the controversy. *See* 177 Va. at 10-11.

Also in the June 15 order, the court directed counsel for each claimant to notify the court in writing whether that counsel's client wanted his or her claim decided by a jury trial, bench trial, or arbitration. In a subsequent letter, the court made it clear that unless the claimant and the insurers interested in that claim agreed on a bench trial or arbitration, a jury trial would be held. In response, and after extensive consultation among counsel, all of the parties agreed to have one arbitrator determine the "raw" value of each claim — that is, the value of each claim without regard to the fact that only $350,000 is available from Royal and State Farm — and then have the court decide how much of the $350,000 each claimant will receive. The parties have also agreed that a further court hearing on that issue is not necessary.

The arbitrator, Frank N. Cowan, Esquire, held evidentiary hearings for all claimants on October 11 and 12. He made the following awards.[2]

| | |
|---|---|
| Estate of Clyde Huffman | $ 750,000 |
| Estate of Doreatha Starks | 750,000 |
| Estate of Antonio Bowman | 600,000 |
| Estate of Skye Edmonds | 600,000 |
| Estate of Leon Carter, Jr. | 400,000 |
| Estate of Corey Johnson | 400,000 |
| Estate of Clifton Harriott | 200,000 |
| Doris Nichols | 100,000 |
| Kathleen Mims | 100,000 |
| | |
| Total | $ 3,900,000 |

All of the parties agree that there is no statute and very little case law to assist the court in making its award. All of the parties also seem to agree that the court has fairly wide discretion in distributing the funds that are available. The real dispute among the parties relates to the fact that some claimants have available to them other forms of insurance, particularly underinsured motorist coverage.

Doris Nichols (Metropolitan), Kathleen Mims (National Interstate), and the Estate of Leon Carter, Jr., (Nationwide) each has underinsured motorist coverage of $100,000. Mims has also received $2,371.41 under the medical payments provision of her National Interstate policy. The estate of Clyde Huffman had a disputed underinsured motorist claim against US F & G which it has now settled for $320,000. In addition, Grayson Mitchell, Inc., and Liberty Mutual have paid $41,172.71 — $32,832 to Huffman's dependents, $2,840.71 in medical expenses, and $5,500 in funeral expenses — under the workers' compensation policy covering Huffman's employment with Grayson Mitchell. These facts have led to a split between the parties, with the claimants who have access to other insurance proceeds and their insurers on one side, and those who do not have such access on the other. Simply put, it is the

---

[2] Mr. Cowan called the court on October 13 and asked if he should mail copies of his awards to counsel. The court told him to mail copies. Later, the court discovered that the arbitration agreement signed by all of the parties provided that the arbitrator would submit his findings to the court "and not disclose or discuss his findings with any other party to this matter." While the court's instruction to Mr. Cowan was contrary to that provision, no party has been prejudiced by it.

position of the claimants without access to other insurance proceeds that the claimants with such access should not share in the $350,000 to be distributed in these actions. Those claimants argue that since there is only a limited fund available here, and since the claimants with other insurance will receive more in total benefits than those without other insurance, only those claimants without other insurance should share in the $350,000. The claimants who have access to other insurance and their insurers argue that to exclude those claimants from a share of the $350,000 would penalize them for having insurance of their own and reward the noninsured claimants at the expense of the insured claimants' "collateral sources."

Virginia Code § 38.2-2206 provides, in pertinent part, as follows:

> A motor vehicle is *"underinsured"* when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury or property damage ... is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.
>
> *"Available for payment"* means the amount of liability insurance coverage applicable to the claim of the injured person for bodily injury or property damage reduced by the payment of any other claims arising out of the same occurrence.

The arbitrator found that Doris Nichols' claim is worth $100,000. That is 2.56% (rounded) of the arbitrator's total award of $3,900,000. Nichols also has $100,000 in underinsured motorist coverage with Metropolitan. If the court awards Nichols 2.56% (rounded) of the $350,000 available in these actions, she will receive $8,974, which would be the only amount of liability insurance coverage "available for payment" to her. However, since she has underinsured motorist coverage of $100,000, she will be able to collect the balance of her $100,000 claim — $91,026 — from Metropolitan. On the other hand, if the court awards her nothing from these actions, there will be no amount of liability insurance coverage "available for payment" to her. Again, however, she will still receive the total amount of her $100,000 claim, all of it now coming from Metropolitan. The claimants without other insurance say this is the fair thing to do because Nichols will still be fully compensated and there will be more to distribute among them.

Kathleen Mims also has underinsured motorist coverage of $100,000, and her claim was also set by the arbitrator at $100,000. Thus, what was just said about Nichols applies equally to her. Mims also received $2,371.41 in medical

payments under her policy. The claimants without other insurance argue that this is even more reason to exclude her from the $350,000 now at stake.

The Estate of Leon Carter, Jr., also has access to $100,000 in underinsured motorist coverage. The arbitrator set the value of that claim at $400,000, which is 10.26% (rounded) of the arbitrator's total award. If the court awards 10.26% (rounded) of the $350,000 to Carter's estate, the award from these actions will be $35,897, and an additional $64,103 will be paid by Nationwide, the issuer of the underinsured motorist coverage applicable to the claim of Carter's estate. If the court awards nothing to Carter's estate in these actions, Nationwide will pay the estate its coverage limit of $100,000. The $35,897 would then be available to the claimants without other insurance.

The situation is different in at least two respects with regard to the Estate of Clyde Huffman. First, Huffman's estate has already settled its underinsured motorist claim, which was disputed, for $320,000. Second, the amounts already received by the Huffman estate from sources other than Royal and State Farm far exceed anything any of the other claimants will receive. Specifically, in addition to the $320,000 paid by US F & G, Huffman's beneficiaries have also already received $32,832 in workers' compensation benefits, and $8,340.71 has been paid by the workers' compensation carrier for Huffman's medical and funeral expenses. The arbitrator's award to the Huffman estate is $750,000, or 19.23% (rounded) of the arbitrator's total award. That would result in a *pro rata* award to Huffman in these cases of $67,308. In light of the fact that Huffman's estate has already received more than $360,000 from other insurance sources, which is more than the total available to all of the claimants in the present actions, the claimants without other insurance argue that it would be patently unfair for it to receive anything at all in these actions.

The argument against excluding Nichols, Mims, and the Carter and Huffman estates comes mainly from the underinsured motorist carriers for Nichols, Mims, and the Carter estate, and from the Huffman estate itself. While Nichols, Mims, and Carter's estate do object to being excluded, the fact is that they will each receive $100,000 no matter what the court does. Their insurers and Huffman's estate, however, stand to lose the amount that Nichols, Mims, and the Carter and Huffman estates would receive from a *pro rata* share of the $350,000. Metropolitan (Nichols) and National Interstate (Mims) would each have to pay their insureds $8,974 more if those insureds are excluded than they would if they are not excluded. Nationwide (Carter's estate) will have to pay its insured $35,897 more. Huffman's estate will receive $67,308 in addition to what it has already received if it is not excluded from the $350,000. It will not receive that amount if it is excluded.

From the perspective of the claimants without other insurance, if all of the claimants share in the $350,000 available in these actions, the claimants without other insurance will receive the following awards:

| | |
|---|---|
| Estate of Doreatha Starks (19.23%) | $ 67,308 |
| Estate of Antonio Bowman (15.38%) | 53,846 |
| Estate of Skye Edmonds (15.38%) | 53,846 |
| Estate of Corey Johnson (10.26%) | 35,897 |
| Estate of Clifton Harriott (5.13%) | 17,949 |

If only the five claimants without other insurance participate, their percentage shares will be adjusted by subtracting the arbitrator's awards to the other four claimants from the $3,900,000 total and determining new percentages for the claimants without other insurance. For example, the Estate of Corey Johnson received an award from the arbitrator of $400,000. The total of the awards to the claimants without other insurance is $2,550,000. The Johnson estate's percentage of that total is 15.69% (rounded). Using that process, the awards for the claimants without other insurance would be as follows:

| | |
|---|---|
| Estate of Doreatha Starks (29.41%) | $ 102,941 |
| Estate of Antonio Bowman (23.53%) | 82,353 |
| Estate of Skye Edmonds (23.53%) | 82,353 |
| Estate of Corey Johnson (15.69%) | 54,902 |
| Estate of Clifton Harriott (7.84%) | 27,451 |
| | |
| Total | $ 350,000 |

As can be seen, there is a significant difference between the amounts the five claimants without other insurance will receive under the two scenarios under consideration. Clifton Harriott's estate will receive $9,502 more if the claimants with access to other insurance proceeds are excluded. Corey Johnson's estate will receive $19,005 more. Antonio Bowman's estate and Skye Edmonds' estate will each receive $28,507 more. And Doreatha Starks' estate will receive $35,633 more. In spite of these differences, the court will award *pro rata* shares to all of the claimants.[3]

---

[3] Actually, the five claimants without other insurance filed a pretrial motion to exclude the claimants with other insurance from the $350,000 and to divide that

With respect to the Estate of Clyde Huffman and the medical payments coverage for Kathleen Mims, the court agrees with those claimants that excluding them from a share of the $350,000 at stake in these actions would deprive them of the benefit of their insurance coverage for which they, or someone on their behalves, paid premiums. This is true regardless of the fact that in the case of Huffman's estate, its recovery will far exceed everyone else's. When a person pays for insurance coverage, or when a person is included under coverage for which someone else pays, he or she should receive the full benefit of that coverage. If Huffman's estate and Kathleen Mims are excluded from sharing in the funds at stake in these actions, they will receive less than the full benefit of the coverage applicable to them, since that coverage is specifically designed to be in addition to whatever coverage is available from a tortfeasor's liability policy. The fact that some decedents did not have other insurance should not deprive claimants with other insurance of the benefit of their bargain.

The foregoing "benefit of their bargain" argument does not apply to the underinsured motorist coverage for Nichols, Mims, and the Estate of Leon Carter, Jr., since they will all receive the full amounts of their claims under either scenario being considered. Their underinsured motorist carriers, however, are also entitled to the benefit of *their* bargains. Each of those carriers agreed to pay its insured the difference between the amount of the insured's claim and the amount of a tortfeasor's liability coverage, up to a maximum of $100,000. To exclude their insureds from the funds at issue here would impose upon those carriers a greater burden than they would otherwise have. Moreover, to exclude those insureds from the funds at issue here would favor some parties to these actions over other parties for the sole purpose of giving the "favored" parties more money. While it might be tempting to make the underinsured motorist carriers pay more simply because they have the money, that cannot be the basis for the court's decision. The court must treat all litigants equally, and it will resist the temptation to help the claimants without underinsured motorist coverage by making the insurers of claimants with underinsured motorist coverage pay more.

In making this ruling, the court recognizes that the two options discussed above are not the only options available to it. In fact, the court could probably make a distribution based on something other than *pro rata* shares. The court feels, however, that the two options discussed above are the most logical and reasonable, and that a *pro rata* share to all of the claimants is the better option

---

amount among them equally; that is, $70,000 apiece. The motion was denied. The court does not know whether their agreement still stands.

of the two. Accordingly, the court will order the following distribution of the $350,000 at issue in these actions:

| | |
|---|---|
| Estate of Clyde Huffman (19.23%) | $ 67,308 |
| Estate of Doreatha Starks (19.23%) | 67,308 |
| Estate of Antonio Bowman (15.38%) | 53,846 |
| Estate of Skye Edmonds (15.38%) | 53,846 |
| Estate of Leon Carter, Jr. (10.26%) | 35,897 |
| Estate of Corey Johnson (10.26%) | 35,897 |
| Estate of Clifton Harriott (5.13%) | 17,950[4] |
| Doris Nichols (2.56%) | 8,974 |
| Kathleen Mims (2.56%) | 8,974 |
| | |
| Total | $350,000 |

The court notes that the arbitrator recommended how the shares of the estate claimants are to be distributed to the beneficiaries of the estates, and, in the absence of objection, the court will follow the arbitrator's recommendations. Since the court is not aware that any of the parties specifically agreed to arbitrate that issue, however, the court will not order a distribution of any such award without an evidentiary hearing. If a hearing is requested for that issue or any other issue, it should be promptly scheduled after consultation among all counsel regarding available dates

---

[4] The court has arbitrarily added $1 to the Estate of Clifton Harriott's claim to make the total award equal $350,000 without awarding fractions of dollars.